SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In the Matter of the Adoption of a Child by J.E.V. and D.G.V.** (A-39-15) (076767)

**Argued April 12, 2016 -- Decided July 26, 2016**

**RABNER, C.J., writing for a unanimous Court.**

In this appeal, the Court addresses a question of first impression: whether an indigent parent who faces termination of her parental rights in a contested private adoption proceeding has a right to appointed counsel.

In 2009, respondent L.A. gave birth to a daughter. When the child was two and one-half years old, L.A. placed her with the Children's Home Society (CHS), a state-licensed adoption agency. L.A. initially was contemplating adoption, but one or two months later, after pre-adoption counseling, L.A. changed her mind and resolved not to surrender her parental rights. The child remained in short-term foster care. In April 2012, the agency placed the child with petitioners, J.E.V. and D.G.V. In July 2012, with the help of a counselor at CHS, L.A. agreed to a service plan that stated her goal was the "eventual parenting of [the] child." The plan called for weekly meetings with a birth parent counselor. L.A. also agreed to look for work and stable housing. A revised service plan dated December 1, 2012 built on those goals and also contemplated developmental services for the child.

Months later, CHS advised L.A. that it intended to proceed with the child's adoption. In a letter dated March 1, 2013, CHS told L.A. that it was "going to make an adoption plan for [her] child." The letter enclosed multiple forms for L.A.'s consent, and advised L.A. that she could file a written objection with the Surrogate's Office within thirty-five days. Toward the end of the letter, CHS advised L.A. as follows: "You have the right to be represented by an attorney, and you may or may not have the right to have counsel appointed to represent you. You may contact the Essex/Newark Legal Service in Essex County in which this action is pending by calling (973) 624-4500." L.A. did not sign the consent forms. Instead, she wrote three objection letters.

On August 1, 2013, with the agency's consent, J.E.V. and D.G.V. filed a complaint for adoption. The court entered an order scheduling a hearing and directing that L.A. receive notice. The order stated, among other things, that L.A. had "the right to appear, object, file written objections, [and] have counsel or court-appointed counsel, if unable to afford counsel." The notice advised L.A. as follows: "If you are unable to obtain an attorney, you may communicate with the New Jersey Bar Association by calling (732) 249-5000. You may also contact the Lawyer Referral Services of the Essex County Bar Association at (973) 533-6775, if you cannot afford an attorney, you may contact the Essex County Legal Aid Society at (973) 622-0063 or the Essex County Surrogate's Court at (973) 621-4900. If you qualify, the Court will appoint counsel for you free of charge." On October 31, 2013, at the case-management conference, the trial court briefly raised the topic of representation with L.A., but did not tell her that a lawyer would be appointed to represent her if she could not afford one.

The court presided over a two-day trial in February and March 2014. J.E.V. and D.G.V. were ably represented by counsel; L.A. appeared pro se. L.A. was confused about several aspects of the trial process, the role of expert psychologists, and the legal standards that applied to the case. Petitioners called eight witnesses to testify, including an expert psychologist; L.A. declined to cross-examine most of them. L.A. testified but did not call an expert or any other witnesses. L.A. also declined to make a closing statement. At the close of the trial, the court concluded that the statutory requirements had been met and terminated L.A.'s parental rights.

L.A. appealed, and the Appellate Division appointed counsel to represent her. The panel reversed and remanded for a new trial, holding "that L.A. had a constitutional and statutory right to court-appointed counsel beginning before trial, when the private adoption agency first determined to proceed with an adoption over her objection." 442 N.J. Super. 472, 474-75 (App. Div. 2015).

The Court granted J.E.V. and D.G.V.'s petition for certification. 223 N.J. 558 (2015).

1

**HELD**: Indigent parents who face termination of parental rights in contested proceedings under the Adoption Act, N.J.S.A. 9:3-37 to -56, are entitled to counsel under Article I, Paragraph 1 of the State Constitution.

1. The Adoption Act outlines the process for adopting a child. As part of the judgment of adoption, the child's parent's rights must be terminated, which can occur in a number of ways. Termination of parental rights may be involuntary, and, as in this appeal, a prospective adoptive parent may petition for termination. In a contested action, the court must ultimately determine whether the prospective adoptive parents have proven, by clear and convincing evidence, that adoption is in the child's best interest. Although under this scenario the order of adoption is entered as part of a private adoption proceeding, the State's involvement is real. The parent's rights are terminated by "state-authorized action." (pp. 11-15)

2. In Lassiter v. Department of Social Services, 452 U.S. 18, 24 (1981), the United States Supreme Court considered an indigent birth mother's right to counsel in termination of parental rights cases initiated by the state. The Court analyzed the question under the Due Process Clause of the Fourteenth Amendment and applied the familiar three-factor test from Mathews v. Eldridge, 424 U.S. 319, 335 (1976). A divided Court held that due process did not require appointed counsel for indigent parents in every termination of parental rights case, and left the decision to the trial court. Four justices dissented. Justice Blackmun, joined by Justices Brennan and Marshall, stated "that due process requires the presence of counsel" for an indigent parent "threatened with judicial termination of parental rights." Id. at 35 (Blackmun, J., dissenting). Justice Stevens dissented separately, stressing that the deprivation of parental rights is "more grievous" than a sentence of incarceration, and that counsel should be appointed to ensure the fairness of the proceedings. Id. at 59-60 (Stevens, J., dissenting). (pp. 16-18)

3. Based on principles derived from Article I, Paragraph 1 of the State Constitution, New Jersey law has generally provided more expansive rights to appointed counsel for indigent litigants than federal law. Relevant to this case, New Jersey has granted indigent parents in termination of parental rights cases greater protection than Lassiter affords. In N.J. Division of Youth & Family Services v. B.R., the Court found that "the need for counsel in a parental termination case is evident" in light of concerns grounded in principles of due process. 192 N.J. 301, 306 (2007). The Court has found a right to counsel under the due process guarantee of the State Constitution in other areas as well. In yet other right-to-counsel cases, the Court has emphasized due process concerns without relying on the State Constitution. See Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971) ("[A]s a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost."). Drawing support from Rodriguez, and relying on due process grounds, Crist v. Division of Youth and Family Services, 128 N.J. Super. 402 (Law Div. 1974), aff'd in part, rev'd in part, 135 N.J. Super. 573 (App. Div. 1975), found a right to counsel in termination cases. The Court has also found that due process requires the appointment of counsel for "indigent parents who are at risk of incarceration at child support enforcement hearings," determining that both the Federal and State Constitutions guarantee that right. Pasqua v. Council, 186 N.J. 127, 149 (2006). (pp. 19-24)

4. The Court holds that an indigent parent who faces termination of parental rights in a contested private adoption proceeding has a right to appointed counsel. A poor parent who seeks to protect the fundamental right to raise a child, at a contested hearing under the Adoption Act, is entitled to counsel under the due process guarantee of the New Jersey Constitution. In so holding, the Court draws on certain common principles from B.R. and the Mathews test to analyze the due process issue. The termination of one's parental rights plainly "implicates a fundamental liberty interest." B.R., supra, 192 N.J. at 305. When parental rights are terminated, the tie between parent and child is severed completely and permanently. That is true whether the State files a petition to terminate or a prospective adoptive parent proceeds under the Adoption Act. Without the assistance of counsel to prepare for and participate in the hearing, the risk of an erroneous outcome is high. The parties are best served when both sides present arguments with the help of able attorneys; the outcome not only protects the parent's rights and the child's welfare, but also helps bring finality to an adoption proceeding. (pp. 24-27)

5. Although this is a case of first impression in New Jersey, other states have found that an indigent parent is entitled to counsel in a private adoption matter, based on either due process principles under their state constitutions or applicable statutes. (pp. 28-29)

2

6. Having determined that indigent parents are entitled to appointed counsel in a contested private adoption matter under the due process guarantee of the State Constitution, the Court considers <u>when</u> the right to appointment of counsel is triggered in private adoption cases. The critical event in the timeline occurs when the parent formally <u>objects</u> to the agency's decision to proceed toward adoption. The very reasons that call for a lawyer to be appointed also favor the appointment of attorneys with the experience to handle these matters. The Office of Parental Representation in the Public Defender's Office has developed expertise in this area from its fine work in state-initiated termination of parental rights cases. However, without a funding source, the Court cannot direct the office to take on an additional assignment and handle contested cases under the Adoption Act. The Court trusts that, as in the past, the Legislature will act and address this issue. (pp. 30-32)

7. Finally, the Court finds that L.A. did not waive the right to appointed counsel. In short, she was denied counsel, and her parental rights were terminated at the end of the court proceeding. Because a complete denial of counsel casts doubt on the fairness of the process followed, the Court must reverse the trial court's decree and remand for a new trial. The Court requests that the trial be expedited but expresses no opinion on what the outcome of the proceeding should be. The Court declines amici's request to require the appointment of a law guardian to represent children in private adoption cases, noting that the Adoption Act does not authorize the appointment of a law guardian. However, the Court reminds trial judges of their power to appoint a guardian ad litem under the Adoption Act, <u>N.J.S.A.</u> 9:3-38(e), when the child's best interests are not being adequately protected by counsel for the parties. (pp. 32-37)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and JUDGE CUFF (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.**

IN THE MATTER OF THE ADOPTION
OF A CHILD BY J.E.V. and
D.G.V.

Argued April 12, 2016 – Decided July 26, 2016

On certification to the Superior Court,
Appellate Division, whose opinion is
reported at 442 N.J. Super. 472 (App. Div.
2015).

Matheu D. Nunn argued the cause for
appellants J.E.V. and D.G.V. (Einhorn,
Harris, Ascher, Barbarito & Frost,
attorneys; Mr. Nunn and Bonnie C. Frost, on
the briefs).

Sean Marotta argued the cause for respondent
L.A. (Donahue, Hagan, Klein & Weisberg and
Hogan Lovells, attorneys; Mr. Marotta,
Francis W. Donahue, and Alexis M. Miller, on
the briefs).

Rebecca J. Livengood argued the cause for
amicus curiae American Civil Liberties Union
of New Jersey (Edward L. Barocas, Legal
Director, attorney; Ms. Livengood, Mr.
Barocas, Jeanne M. LoCicero, and Alexander
R. Shalom, on the letter brief).

Alice M. Plastoris argued the cause for
amicus curiae New Jersey Association for
Justice.

Melville D. Miller, Jr., argued the cause
for amicus curiae Legal Services of New
Jersey (Mr. Miller, attorney; Mr. Miller,
Jeyanthi C. Rajaraman, and Mary M. McManus-
Smith, on the brief).

1

Cheryl E. Connors argued the cause for amicus curiae New Jersey State Bar Association (Miles S. Winder III, President, attorney; Mr. Winder, of counsel; Ms. Connors, Brian G. Paul, and Amanda S. Trigg, on the brief).

Mary E. Coogan and Peter G. Chen submitted a brief on behalf of amicus curiae Advocates for Children of New Jersey.

CHIEF JUSTICE RABNER delivered the opinion of the Court.

This appeal raises a question of first impression: whether an indigent parent who faces termination of her parental rights in a contested private adoption proceeding has a right to appointed counsel.

Our culture and legal system both embrace the right to raise one's child. That fundamental right is forever terminated when a child is adopted by another family. Under the law, indigent parents have a right to counsel when the State initiates a termination case. See N.J.S.A. 30:4C-15.4(a). The issues are no less challenging or significant in a private adoption matter. In both situations, parents who are poor and typically have no legal training are ill-equipped to defend themselves in court.

Because of the nature of the right involved -- the invaluable right to raise a child -- and the risk of an erroneous outcome without the help of an attorney, we hold that indigent parents are entitled to appointed counsel in a

2

contested private adoption matter under the due process guarantee of the State Constitution. We therefore affirm the judgment of the Appellate Division.

I.

We draw the following facts from the testimony at trial as well as other parts of the record on appeal. On August 24, 2009, respondent L.A. gave birth to a daughter. When the child was two and one-half years old, L.A. placed her with the Children's Home Society (CHS), a state-licensed adoption agency.

L.A. was contemplating adoption when she initially placed the child with CHS. At the time, L.A. believed that course was in the child's best interest in light of L.A.'s personal circumstances. One or two months later, after pre-adoption counseling, L.A. changed her mind and resolved not to surrender her parental rights.

The child remained in short-term foster care. The agency placed her with a foster family in March 2012 and moved her to a second foster placement with petitioners, J.E.V. and D.G.V., the following month. As the Appellate Division noted, the evidence reveals that petitioners provided the child with a loving family setting that included a daughter of about the same age, and offered access to professional services "to address the child's special needs." In re Adoption of a Child by J.E.V., 442 N.J. Super. 472, 476 (App. Div. 2015).

3

L.A. visited her daughter periodically while she was in foster care. From March through July 2012, L.A. visited the child eight times; from August 2012 to February 2013, L.A. made four visits. Throughout that period and afterward, L.A.'s living arrangements were unstable. For part of the time, she stayed with her sister in Pennsylvania; she also lived in transitional housing and received public assistance. Id. at 475-76. L.A. lived with her two sons, born in 2006 and 2013, while her daughter was in foster care. Ibid.

In July 2012, with the help of a counselor at CHS, L.A. agreed to a service plan that stated her goal was the "eventual parenting of [the] child." The plan called for weekly meetings with a birth parent counselor. L.A. also agreed to look for work and stable housing. A revised service plan dated December 1, 2012 built on those goals and also contemplated developmental services for the child. In addition, the plan called for L.A. to visit her daughter weekly. L.A. did not sign the revised plan.

Months later, CHS advised L.A. that it intended to proceed with the child's adoption. In a letter dated March 1, 2013, CHS told L.A. that because she had "been inconsistent with visitation," had not "maintained consistent contact with [her] counselor," and had "made no viable plan to parent [her]

4

daughter," CHS was "going to make an adoption plan for [her] child."

The letter enclosed multiple forms for L.A.'s consent; one was titled "Surrender and Relinquishment of Parental Rights and Surrender of Custody." The letter also advised L.A. that she could file a written objection with the Surrogate's Office within thirty-five days.[1]

Toward the end of the letter, CHS advised L.A. as follows: "You have the right to be represented by an attorney, and you may or may not have the right to have counsel appointed to represent you. You may contact the Essex/Newark Legal Service in Essex County in which this action is pending by calling (973) 624-4500." (Emphasis added.)

L.A. did not sign the consent forms. Instead, on March 28, 2013, she wrote the first of three objection letters. The two-page, handwritten letter states at the outset, "I am objecting to the adoption process of my daughter." The letter describes L.A.'s position and her plans for the child and asks that she not be "deprived[d]" of her "motherly rights." L.A. sent similar letters dated October 8, 2013 and December 7, 2013.

_____

[1] A parent has the right to file written objections to an adoption and must act within twenty days after notice is given, in the case of a resident, and within thirty-five days, in the case of a non-resident. N.J.S.A. 9:3-45(a).

5

With the agency's consent, petitioners J.E.V. and D.G.V. filed a complaint for adoption on August 1, 2013.[2] The court entered an order on the same date, which scheduled a hearing and directed that L.A. receive notice. The order stated, among other things, that L.A. had "the right to appear, object, file written objections, [and] have counsel or court-appointed counsel, if unable to afford counsel."

L.A. was served with a copy of the complaint, the order, and a notice of hearing the following month. The notice explained that the upcoming "hearing may ultimately lead to the absolute irrevocable termination" of L.A.'s rights to her child. The notice also advised L.A. as follows:

> If you are unable to obtain an attorney, you may communicate with the New Jersey Bar Association by calling (732) 249-5000. You may also contact the Lawyer Referral Services of the Essex County Bar Association at (973) 533-6775, if you cannot afford an attorney, you may contact the Essex County Legal Aid Society at (973) 622-0063 or the Essex County Surrogate's Court at (973) 621-4900. If you qualify, the Court will appoint counsel for you free of charge.

At the initial case-management conference on October 31, 2013, the trial court briefly raised the topic of representation with L.A.:

---

[2] The Division of Child Protection and Permanency (Division) has not been involved in this case. Nor have there been any allegations of abuse or neglect against L.A.

6

> Judge: Do you intend to get an attorney at all in this matter?
>
> [L.A.]: I'm working on it.
>
> Judge: Okay, well you need to do so quickly because any questions you want to serve should be done within one week of today.

The court did not tell L.A. that a lawyer would be appointed to represent her if she could not afford one.

The court presided over a two-day trial in February and March 2014. J.E.V. and D.G.V. were ably represented by counsel; L.A. appeared pro se. Not surprisingly given her lack of legal training, L.A. was confused about where to send interrogatories, the role of expert psychologists, how to give an opening statement, how to cross-examine witnesses, how to present and object to evidence, and the legal standards that applied to the case. Petitioners called eight witnesses to testify, including an expert psychologist; L.A. declined to cross-examine most of them. L.A. testified but did not call an expert or any other witnesses. Unlike opposing counsel, who meticulously reviewed the evidence and applied it to the legal standard in summation, L.A. declined to make a closing statement.

At the close of the trial, the court marshaled the evidence, concluded that the statutory requirements had been met, and terminated L.A.'s parental rights.

7

L.A. appealed, and the Appellate Division appointed counsel to represent her.  Id. at 475 n.2.  The panel held "that L.A. had a constitutional and statutory right to court-appointed counsel beginning before trial, when the private adoption agency first determined to proceed with an adoption over her objection."  Id. at 474-75.  The panel therefore reversed and remanded for a new trial.

The Appellate Division observed that L.A. would have been entitled to appointed counsel if the Division, acting on behalf of the State, had sought to terminate her parental rights.  Id. at 475, 478 (citing N.J.S.A. 30:4C-15.4(a); N.J. Division of Youth & Family Services v. B.R., 192 N.J. 301, 305-06 (2007)).  Here, a state-licensed agency "decided on its own that L.A. was an unfit mother . . . and encouraged the foster family to file an adoption complaint over" L.A.'s objection.  Id. at 478.  The panel observed that the private agency acted "in a fashion similar to the Division, but without providing the services to promote reunification or the legal safeguards afforded parents involved in litigation with the Division."  Ibid.

The panel concluded that "an indigent person" facing the possible termination of parental rights -- an "irreversible" decision "of constitutional dimensions" -- "needs" and is "entitled to appointed counsel."  Id. at 479-80.  For support, the panel cited a line of cases that found a right to counsel

8

under the State Constitution even when that right was not guaranteed by federal law.  Id. at 480-81.

After oral argument, the Appellate Division issued an order, on its own motion, which granted L.A. weekly visitation with the child.  After a number of intermediate steps that are not relevant, this Court directed the trial court to assess the impact of visitation on the child.  The trial court promptly appointed an expert, held a hearing, and found that the immediate resumption of visitation would result in psychological harm to the child.  This Court, in turn, entered an order that continued a stay of visitation pending this appeal, and also continued the stay of adoption proceedings.

We granted J.E.V. and D.G.V.'s petition for certification. 223 N.J. 558 (2015).  We also granted leave to appear as amicus curiae to the following groups:  the American Civil Liberties Union of New Jersey (ACLU); the New Jersey Association for Justice (NJAJ); Legal Services of New Jersey (LSNJ); The New Jersey State Bar Association (NJSBA); and Advocates for Children of New Jersey (ACNJ).

II.

In a supplemental brief to the Appellate Division, petitioners J.E.V. and D.G.V. did not argue that L.A. had no right to appointed counsel.  Instead, they claimed that CHS and the trial court "sufficiently advised [L.A.] of her right to

9

counsel." They urged the court to find that L.A. "waived her right to counsel after being apprised of that right."

Petitioners have taken a different approach before this Court. They contend that the Appellate Division "created a new right to appointed counsel in termination proceedings under the Adoption Act," N.J.S.A. 9:3-37 to -56, which does not appear in the statute. They also submit that neither equal protection nor due process principles justify the appointment of counsel when a parent voluntarily places a child for adoption and private individuals initiate adoption proceedings.

Petitioners argue in the alternative that L.A. received adequate notice of her right to counsel, understood that right, and waived it through her conduct. Petitioners highlight two written notices served on L.A. -- the trial court's order scheduling a hearing and the notice of hearing -- and note that L.A. never asked for an attorney.

L.A. urges that the Appellate Division's judgment be upheld. She argues that "there is no more grave constitutional need for appointed counsel than a permanent termination of parental rights action against an indigent parent whether it be initiated by the State or by private adoption." She contends that the right to appointed counsel in private adoption cases is founded on due process and equal protection guarantees in the State Constitution. L.A. relies on State case law that she

10

claims provides more expansive protection than federal law.  She also points to decisions from other states.

L.A. also contends that there is a flaw in petitioners' waiver argument.  She argues that she could not have "knowingly, voluntarily, and intelligently waived a right that [petitioners] strenuously argue she does not have."  L.A. submits that because the right has not been clearly established, it would have been impossible for her to waive it.  She also points to ambiguities in the language of the notices and the trial court's failure to inform her that she had a right to appointed counsel.

All five amici support the judgment of the Appellate Division.  The ACLU and NJAJ argue that due process and equal protection doctrines require the appointment of counsel for indigent parents who object to adoption proceedings.  The NJSBA and ACNJ focus on due process principles.  LSNJ highlights that termination of parental rights is a consequence of magnitude, which gives rise to appointment of counsel.  We refer below to certain other arguments that amici present.

III.

A.

The Adoption Act outlines the process for adopting a child. The law must "be liberally construed" to promote "the best interests of children" and ensure that "the safety of children" is "of paramount concern."  N.J.S.A. 9:3-37.  "Due regard" must

11

also "be given to the rights of all persons affected by an adoption." Ibid.

A completed adoption establishes "the same relationship[] . . . between the child and the adopting parent as if the child were born to the adopting parent." N.J.S.A. 9:3-50(b). As part of the judgment of adoption, the child's parent's rights must be terminated. N.J.S.A. 9:30-50(c)(1). That can occur in a number of ways.

A parent may voluntarily surrender a child to a state-approved agency for adoption. N.J.S.A. 9:3-41(a). In other words, the child will become available for adoption if the parent voluntarily relinquishes all parental rights "for purposes of allowing a child to be adopted." N.J.S.A. 9:3-38(j). Before a parent may sign a written document that surrenders a child, the agency must offer counseling and inform the parent that the surrender "means the permanent end of the relationship and all contact between the parent and child." N.J.S.A. 9:3-41(a).

Termination of parental rights may also be involuntary. That process can begin in several ways: (1) the Division may petition for termination under N.J.S.A. 30:4C-15; (2) a state-approved agency may petition for termination under N.J.S.A. 9:2-18; or (3) a prospective adoptive parent may petition for termination under N.J.S.A. 9:3-47 or -48. See Robert A. Fall &

Curtis J. Romanowski, New Jersey Family Law, Child Custody, Protection & Support, § 6:1-3 at 87 (2016).

This appeal involves the third avenue, which was invoked when L.A. declined to surrender her child to CHS for adoption. Under that course, a prospective adoptive parent first files a complaint for adoption. N.J.S.A. 9:3-44. Notice must be served on each parent of the child, as defined in the statute, and must inform them "of the purpose of the action and of the parent's right" to object. N.J.S.A. 9:3-45.

In a contested action, the court must ultimately determine whether the prospective adoptive parents have proven, by clear and convincing evidence, that adoption is in the child's best interest. J.E.V., supra, 442 N.J. Super. at 483; Fall & Romanowski, supra, §6:3-1 at 93 (citing N.J.S.A. 9:3-46(a)); see also Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S. Ct. 1388, 1391-92, 71 L. Ed. 2d 599, 603 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").

Under N.J.S.A. 9:3-46(a), a judgment of adoption may be entered over the objection of a parent who placed a child for adoption if the court finds that the parent has either "substantially failed to perform the regular and expected

13

parental functions of care and support" or is unable to perform those functions. The functions include:

> (a) the maintenance of a relationship with the child such that the child perceives the person as his parent;
>
> (b) communicating with the child or person having legal custody of the child and parenting time rights, . . . unless prevented from so doing by the custodial parent or other custodian of the child or a social service agency over the birth parent's objection; or
>
> (c) providing financial support for the child unless prevented from doing so by the custodial parent or other custodian of the child or a social service agency.
>
> [N.J.S.A. 9:3-46(a).]

When, as in this case, a parent has not placed the child for adoption, the standard to be used in a contested action is the "best interest of the child." Ibid. The Adoption Act defines the standard in this context as follows:

> The best interest of a child requires that a parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations for the birth and care of the child, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.
>
> [Ibid.]

14

See In re Adoption of Children by G.P.B., 161 N.J. 396, 410-11 (1999); J.E.V., supra, 442 N.J. Super. at 484-85.

To reach a decision, the trial court takes evidence at an in-camera hearing. N.J.S.A. 9:3-47(c). If the court "finds against the objecting parent," the court enters "an order terminating the parental rights of the parent." Ibid. If, in addition, the court "is satisfied that the best interests of the child would be promoted by the adoption, the court shall enter a judgment of adoption." N.J.S.A. 9:3-47(d).

Although under this scenario the order of adoption is entered as part of a private adoption proceeding, the State's involvement is real. The parent's rights are terminated by "state-authorized action." In re Adoption of a Child by J.D.S., 176 N.J. 154, 158 (2003) (holding that indigent parent facing termination in private adoption matter is entitled to free appellate transcript provided by Public Defender). Indeed, as this Court noted in J.D.S., termination of parental rights under the Adoption Act "is a component of the State's overall and coordinated system of child protection and supervision." Ibid. (citation omitted); see also M.L.B. v. S.L.J., 519 U.S. 102, 116 n.8, 117 S. Ct. 555, 564 n.8, 136 L. Ed. 2d 473, 488 n.8 (1996) (noting "the challenged state action remains essentially the same" in termination proceedings initiated by state agencies and private parties); N.J.S.A. 9:3-47(c), -50(c)(1).

15

B.

In <u>Lassiter v. Department of Social Services</u>, 452 <u>U.S.</u> 18, 24, 101 <u>S. Ct.</u> 2153, 2158, 68 <u>L. Ed.</u> 2d 640, 648 (1981), the United States Supreme Court considered an indigent birth mother's right to counsel in termination of parental rights cases initiated by the state. The Court analyzed the question under the Due Process Clause of the Fourteenth Amendment and applied the familiar test from <u>Mathews v. Eldridge</u>. <u>Id.</u> at 24-25, 27, 101 <u>S. Ct.</u> at 2158-59, 68 <u>L. Ed.</u> 2d at 648-49 (citing <u>Mathews v. Eldridge</u>, 424 <u>U.S.</u> 319, 335, 96 <u>S. Ct.</u> 893, 903, 47 <u>L. Ed.</u> 2d 18, 33 (1976)).

The <u>Mathews</u> test weighs three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [<u>Mathews</u>, <u>supra</u>, 424 <u>U.S.</u> at 335, 96 <u>S. Ct.</u> at 903, 47 <u>L. Ed.</u> 2d at 33.]

<u>Lassiter</u> applied the factors to the case before the Court. The Court found that the parent's private interest was "commanding" because the "desire" and "right" to raise one's children is "an important interest," and the State "sought not simply to

16

infringe upon that interest but to end it."  Id. at 27, 101 S. Ct. at 2159-60, 68 L. Ed. 2d at 649-50.

Next, the Court found that the risk of an erroneous determination could be "insupportably high."  Id. at 31, 101 S. Ct. at 2162, 68 L. Ed. 2d at 652.  The Court observed that the issues are "not always simple" and may involve expert testimony, which can be difficult for parents with little education to understand and refute.  Id. at 30-31, 101 S. Ct. at 2161, 68 L. Ed. 2d at 651-52.

The Court also noted that "the State has an urgent interest in the welfare of the child" and "shares the parent's interest in an accurate and just decision."  Id. at 27, 101 S. Ct. at 2160, 68 L. Ed. 2d at 650.  The State's interest diverges from the parent's when it comes to fiscal and administrative costs.  Id. at 28, 101 S. Ct. at 2160, 68 L. Ed. 2d at 650.  But that "legitimate" interest, the Court concluded, "is hardly significant enough to overcome private interests as important as those here."  Ibid.

Still, the Court opted for a case-by-case approach because the net weight of the factors had to be "weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty."  Id. at 31-32, 101 S. Ct. at 2161-62, 68 L. Ed. 2d at 652.  The strength of the factors "in a given case" might tip

17

the balance in either direction.  Ibid.  As a result, a divided Court held that due process did not require appointed counsel for indigent parents in every termination of parental rights case, and left the decision to the trial court, subject to appellate review.  Ibid. (citing Gagnon v. Scarpelli, 411 U.S. 778, 788, 93 S. Ct. 1756, 1763, 36 L. Ed. 2d 656, 665 (1973)).

Four justices dissented.  Justice Blackmun, joined by Justices Brennan and Marshall, wrote that the majority did not take its analysis of the Mathews factors to a "logical conclusion."  Id. at 49, 101 S. Ct. at 2171, 68 L. Ed. 2d at 663 (Blackmun, J., dissenting).  According to the dissenters, the outcome of the balancing process should have applied to the overall category of cases and not to different litigants within the same context.  Ibid.  The "obvious conclusion," the dissent stated, was "that due process requires the presence of counsel" for an indigent parent "threatened with judicial termination of parental rights."  Id. at 35, 101 S. Ct. at 2163, 68 L. Ed. 2d at 654.

Justice Stevens dissented separately.  He stressed that the deprivation of parental rights is "more grievous" than a sentence of incarceration, and that counsel should be appointed to ensure the fairness of the proceedings.  Id. at 59-60, 101 S. Ct. at 2176, 68 L. Ed. 2d at 669-70 (Stevens, J., dissenting).

18

C.

New Jersey law has generally provided more expansive rights to appointed counsel for indigent litigants than federal law. Pasqua v. Council, 186 N.J. 127, 147 n.5 (2006) (citations omitted). Our case law over the years has focused on due process concerns in different ways. Those principles derive from Article I, Paragraph 1 of the State Constitution, which provides that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." Time and again, this Court has found that the right to due process of law is implicit in those words. See, e.g., Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 239 (2008); Pasqua, supra, 186 N.J. at 147; Doe v. Poritz, 142 N.J. 1, 99 (1995); Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985).

Relevant to this case, New Jersey has granted indigent parents in termination of parental rights cases greater protection than Lassiter affords. In Crist v. Division of Youth and Family Services, 128 N.J. Super. 402, 416 (Law Div. 1974), aff'd in part, rev'd in part, 135 N.J. Super. 573 (App. Div. 1975), the Law Division held that parents facing state-initiated termination proceedings had a right to appointed counsel. As

the Law Division observed, to decide otherwise, in light of the "compendium of sociological, psychological, or medical data, well beyond the ken of the ordinary layman," which an unrepresented parent would have to deal with, would be "a fundamental deprivation of procedural due process." Id. at 415.

The Appellate Division affirmed that core holding but found no basis for the Law Division's order that the Division of Youth and Family Services (DYFS), the Division's predecessor, had to pay appointed counsel. Crist, supra, 135 N.J. Super. at 575. Without statutory authorization, the panel held, the Law Division "lacks the power to compel [DYFS] to compensate assigned counsel." Ibid. Years later, the Legislature enacted N.J.S.A. 30:4C-15.4(a), which directs the court to appoint the Office of the Public Defender to represent indigent parents in state-initiated termination proceedings. See B.R., supra, 192 N.J. at 306.

This Court approved of Crist in B.R. Ibid. We found that "the need for counsel in a parental termination case is evident in light of" the following concerns, which are grounded in principles of due process:

> the nature of the right involved; the permanency of the threatened loss; the State's interest in exercising its parens patriae jurisdiction only where necessary; and the potential for error in a proceeding in which the interests of an indigent parent, unskilled

20

> in the law, are pitted against the resources of the State.
>
> [Ibid.]

The Court has found a right to counsel under the due process guarantee of the State Constitution in other areas as well. In Doe, supra, the plaintiff sought to enjoin the registration and notification requirements for certain convicted sex offenders under Megan's Law. 142 N.J. at 26. The Court upheld the law against a variety of constitutional challenges. Id. at 12. The Court, however, concluded that a sex offender's tier classification can subject him or her to public stigma, which "implicate[s] protectible liberty interests in privacy and reputation, and therefore trigger[s] the right to due process" under the Federal and State Constitutions. Id. at 30-31, 104-06. As a result, the Court held that indigent sex offenders are entitled to appointed counsel at tier classification hearings and "strongly suggest[ed] that legislation providing for that representation be adopted." Id. at 30-31.

In yet other right-to-counsel cases, the Court has emphasized due process concerns without relying on the State Constitution. In Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971), for example, this Court held that "as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence

21

of magnitude without first having had due and fair opportunity to have counsel assigned without cost." The case involved two defendants charged with disorderly persons offenses, for which the maximum penalties were up to six months' imprisonment and a fine of not more than five hundred dollars. Id. at 284-85. The Court reasoned that when serious consequences are at stake -- including actual imprisonment or even "the substantial loss of driving privileges" -- poor defendants should have counsel assigned because the "lack of legal representation may place [them] at a disadvantage" in complex as well as simple matters. Id. at 295.

Crist, discussed above, found a right to counsel in termination cases. The ruling relied not only on due process grounds but also drew support from Rodriguez: "It is difficult to conceive of the loss of driving privileges to be more serious than the loss of one's children. Indeed, it is difficult to consider many consequences of greater magnitude than the loss of one's children." Crist, supra, 128 N.J. Super. at 415-16.

Following Rodriguez, the Court applied the consequence of magnitude standard in other contexts. In State v. Hrycak, 184 N.J. 351, 362 (2005), the Court noted that counsel is provided in DWI cases because the defendant faces a potential sentence of

imprisonment -- a consequence of magnitude.[3]  State v. Hamm, 121 N.J. 109, 124 (1990), cert. denied, 499 U.S. 947, 111 S. Ct. 1413, 113 L. Ed. 2d 466 (1991), noted that suspension of a driver's license is a consequence of magnitude.  And in State v. Hermanns, 278 N.J. Super. 19, 29-30 (App. Div. 1994), the Appellate Division determined that substantial monetary sanctions in a single proceeding "give[] rise to the right to counsel under Rodriguez."

The Court Rules likewise address this issue.  Rule 7:3-2(b) instructs municipal court judges to appoint counsel "[i]f the court is satisfied that the defendant is indigent and . . . faces a consequence of magnitude."  To determine whether a case presents a consequence of magnitude, municipal court judges consider if the defendant faces imprisonment, loss of driving privileges, or an aggregate monetary sanction of $800 or more. See Pressler & Verniero, Guidelines for Determination of Consequence of Magnitude, Current N.J. Court Rules, Appendix to Part VII at 2597 (2016).

The Court has also found that due process requires the appointment of counsel for "indigent parents who are at risk of

---

[3]  That approach exceeds the level of protection available under federal law, which provides counsel only in cases that lead to actual imprisonment.  See Scott v. Illinois, 440 U.S. 367, 369, 99 S. Ct. 1158, 1160, 59 L. Ed. 2d 383, 386 (1979).

incarceration at child support enforcement hearings." Pasqua, supra, 186 N.J. at 149. The Court held that both the Federal and State Constitutions guarantee that right. Id. at 133. In its analysis, the Court carefully considered the Mathews factors, id. at 142-45, as well as case law interpreting Article I, Paragraph 1 of the State Constitution, id. at 146-49.

Pasqua also called upon the Legislature to provide a funding source to compensate appointed counsel. Id. at 153-54. The Court recognized that, in the past, "the Legislature has acted responsibly to provide funding" under similar circumstances. Ibid. (citations omitted).

## IV.

We find that an indigent parent who faces termination of parental rights in a contested private adoption proceeding has a right to appointed counsel. A poor parent who seeks to protect the fundamental right to raise a child, at a contested hearing under the Adoption Act, is entitled to counsel under the due process guarantee of the New Jersey Constitution.

## A.

We draw on certain common principles from B.R. and the Mathews test to analyze the due process issue. They primarily include "the nature of the right involved"; "the permanency of the threatened loss"; the risk of error at a hearing conducted without the help of counsel; and the State's interest, which is

24

bounded by its parens patriae jurisdiction.  B.R., supra, 192

N.J. at 306; Mathews, supra, 424 U.S. at 335, 96 S. Ct. at 903,

47 L. Ed. 2d at 33.

The right to raise one's child is "deeply embedded in our

history and culture."  Moriarty v. Bradt, 177 N.J. 84, 101

(2003).  That right has "been deemed 'essential'" and is

considered "'far more precious . . . than property rights.'"

N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599

(1986) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S.

Ct. 1208, 1212, 31 L. Ed. 2d 551, 558 (1972)).  The termination

of one's parental rights, therefore, plainly "implicates a

fundamental liberty interest."  B.R., supra, 192 N.J. at 305.

When parental rights are terminated, the tie between parent

and child is severed completely and permanently.  That is true

whether the State files a petition to terminate or a prospective

adoptive parent proceeds under the Adoption Act.  The outcome is

the same:  the end of the parent/child relationship.  As the

Supreme Court observed in Lassiter, supra, a parent's interest

in the decision to terminate her parental status is therefore

"commanding."  452 U.S. at 27, 101 S. Ct. at 2160, 68 L. Ed. 2d

at 650.

Without the assistance of counsel to prepare for and

participate in the hearing, the risk of an erroneous outcome is

high.  It is hardly remarkable to note that a parent who is a

layperson faces significant challenges if she appears on her own to contest a private adoption proceeding. The issues are not simple. They may involve complicated, expert medical and psychological evidence. See id. at 30, 101 S. Ct. at 2161, 68 L. Ed. 2d at 651; Crist, supra, 128 N.J. Super. at 415. An indigent parent who has no legal training will not know how to work with a psychologist to prepare for a trial or how to cross-examine the other side's expert. She will have a hard time developing defenses, gathering evidence, presenting a case, and making arguments to address the relevant legal standard. See Lassiter, supra, 452 U.S. at 45-46, 101 S. Ct. at 2169, 68 L. Ed. 2d at 661 (Blackmun, J., dissenting). A parent without a background in evidence law will also likely be unable to prevent opposing counsel from introducing hearsay or other inadmissible testimony.

Viewed from another perspective, factfinders benefit from probing cross-examination and careful scrutiny of the evidence. That is particularly true when it comes to expert medical testimony. An indigent parent, with no legal or medical knowledge, is unlikely to be able to help the court in that regard.

As the trial record reveals, L.A. struggled in the face of those obstacles at trial. She was unable to cross-examine effectively petitioner's expert or fact witnesses and bypassed

26

cross-examination for most of them.  She presented no evidence other than her own testimony.  She could not marshal the evidence and apply it to the legal standard, and she declined to present a closing argument altogether.

Without question, appointed counsel can assist parents like L.A. and help reduce the risk of mistaken outcomes in contested proceedings of this type.

As to the State's interest to protect the welfare of children, petitioners point to the general interest of the public and the State to facilitate adoptions.  Petitioners are correct.  Both the public and the State have a strong interest in seeing that children are adopted in appropriate cases.  Because an adoption terminates parental rights, N.J.S.A. 9:3-50(c)(1), the public, the State, and the parent also share an "interest in an accurate and just decision."  Lassiter, supra, 452 U.S. at 27, 101 S. Ct. at 2160, 68 L. Ed. 2d at 650.  The adversary system, with an "equal contest of opposed interests," is designed to lead to that very outcome.  Id. at 28, 101 S. Ct. at 2160, 68 L. Ed. 2d at 650.  In addition, when both sides present arguments to a judge with the help of able attorneys, the outcome not only protects the parent's rights and the child's welfare, it also helps bring finality to an adoption proceeding.  All parties are best served in that way.

Lassiter also considered the fiscal burdens of appointed counsel on the State. That is a legitimate concern -- in both state-initiated termination cases and private adoption proceedings -- but not a weighty one in light of the significant private interest involved. See Lassiter, supra, 452 U.S. at 28, 101 S. Ct. at 2160, 68 L. Ed. 2d at 650.

B.

Although this is a case of first impression in New Jersey, other states have considered the same issue. They have found that an indigent parent is entitled to counsel in a private adoption matter.

Lassiter set the constitutional floor for a parent's due process rights in a termination proceeding. It also invited states to go further. Id. at 33, 101 S. Ct. at 2163, 68 L. Ed. 2d at 654. Among states that have done so, a number rely on due process principles under their state constitutions.[4] Others have

---

[4]  See, e.g., In re K.L.J., 813 P.2d 276, 286 (Alaska 1991) (private adoption); In re Adoption of Meaghan, 961 N.E.2d 110, 112-13 (Mass. 2012) (private adoption, relying on due process and equal protection principles); K.P.B. v. D.C.A. (In re J.L.B.), 685 So. 2d 750, 752 (Ala. Civ. App. 1996) (private action, discussing Ex parte Shuttleworth, 410 So. 2d 896, 899 (Ala. 1981)); In re Jay R., 197 Cal. Rptr. 672, 678 (Ct. App. 1983) (private adoption); see also J.B. v. Fla. Dep't of Children & Families, 170 So. 3d 780, 789-90 (Fla. 2015) (state-initiated action); In the Interest of TM, 319 P.3d 338, 340 (Haw. 2014) (same). Other state courts require the appointment of counsel in private adoption actions based on equal protection grounds. See, e.g., Jo Ellen J. v. John M. (In re L.T.M.), 824 N.E.2d 221, 229-32 (Ill. 2005); J.E.B. v. K.C. (In re S.A.J.B.),

proceeded by statute.[5]

C.

As noted above, this Court has found that due process requires appointment of counsel to indigent litigants in various settings. Given the fundamental nature of the right to parent that may be lost forever in a disputed adoption hearing, there is no room for error here. We therefore hold that indigent parents who face termination of parental rights in contested proceedings under the Adoption Act are entitled to have counsel represent them under Article I, Paragraph 1 of the State Constitution.

For reasons discussed earlier, we do not accept petitioner's claim that because the Division did not initiate this action, the State has no involvement and due process is not implicated. See J.D.S., supra, 176 N.J. at 158; see also M.L.B., supra, 519 U.S. at 116 n.8, 117 S. Ct. at 564, 136 L. Ed. 2d at 488. Also, because we rely on due process principles,

---

679 N.W.2d 645, 649-51 (Iowa 2004); A.W.S. v. A.W., 339 P.3d 414, 419 (Mont. 2014); In re Adoption of K.A.S., 499 N.W.2d 558, 566 (N.D. 1993); Zockert v. Fanning, 800 P.2d 773, 779 (Or. 1990).

[5] See, e.g., Ariz. Rev. Stat. Ann. § 8-221(B) (2016); Ky. Rev. Stat. Ann. § 625.080 (2016); Me. Rev. Stat. Ann. tit. 18-A, § 9-106(b) (2016); Mo. Rev. Stat. § 211.462 (2016); N.M. Stat. Ann. § 32A-5-16(E) (2016); N.Y. Family Ct Act §262(a)(vii) (2016); Okla. Stat. tit. 10, § 7505-4.1(D) (2016); 23 Pa. Cons. Stat. Ann. § 2313(a.1) (2016); Vt. Stat. Ann. tit. 15A, § 3-201(a) (2016); Wash. Rev. Code Ann. § 26.33.110(3)(b) (2016).

29

we need not address L.A.'s and amici's equal protection arguments.

V.

We next consider <u>when</u> the right to appointment of counsel is triggered in private adoption cases.  The Appellate Division observed that a lawyer should be assigned before trial, "when the private agency first decides to move toward adoption." <u>J.E.V.</u>, <u>supra</u>, 442 <u>N.J. Super.</u> at 481.  We agree that counsel should be appointed to help an indigent parent prepare for trial.  The critical event in the timeline occurs when the parent formally <u>objects</u> to the agency's decision to proceed toward adoption.  <u>See</u> <u>id.</u> at 487 ("[O]nce a private adoption agency determines that it is going to seek adoption over the objection of a parent, that parent has the right to counsel."). When a parent contests an agency's decision, the dispute is sharpened and likely headed to court.  In non-agency adoption cases, the issue is joined when a petition for adoption is filed and the birth parent objects.

Legal Services of New Jersey recommends that a uniform notice procedure be used.  In this case, the agency sent L.A. a letter in March 2013 to notify her of its plan to move toward an adoption.  We ask the Director of the Administrative Office of the Courts to review letters of this nature and develop a form designed to enable each parent to respond directly.  At a

30

minimum, the form letter, in plain language, should (1) advise parents that they have the right to object, (2) outline how they should do so, (3) explain that failure to respond to the notice in writing will constitute a waiver, (4) tell parents about the statutory right to counseling before they decide whether to sign a surrender form, (5) advise them what to do if they wish to surrender the child, (6) inform parents that they have the right to be represented by an attorney if they object and that the court will appoint counsel if they are indigent, and (7) provide details about how to apply for counsel. See N.J.S.A. 9:3-45. To simplify matters, the form itself can provide a space to object directly.

The very reasons that call for a lawyer to be appointed also favor the appointment of attorneys with the experience to handle these matters. Contested adoption proceedings raise important substantive issues and can lead to complicated and involved hearings. The Office of Parental Representation in the Public Defender's Office has developed expertise in this area from its fine work in state-initiated termination of parental rights cases. Without a funding source, we cannot direct the office to take on an additional assignment and handle contested cases under the Adoption Act. See Crist, supra, 135 N.J. Super. at 575-76; see also Pasqua, supra, 186 N.J. at 153.

31

In the past, as we noted in Pasqua, "the Legislature has acted responsibly" and provided counsel for the poor when the Constitution so requires. Ibid. For example, after Crist, the Legislature enacted N.J.S.A. 30:4C-15.4(a), which directs judges to appoint the Office of the Public Defender to represent indigent parents who ask for counsel in termination of parental rights cases under Title 30. Once again, we trust that the Legislature will act and address this issue. See Pasqua, supra, 186 N.J. at 153.

In the interim, we have no choice but to turn to private counsel for assistance. We invite volunteer organizations to offer their services, as pro bono attorneys have done in other areas. See, e.g., In re Op. No. 17-2012 of Advisory Comm. on Prof'l Ethics, 220 N.J. 468, 469 (2014). Until the Legislature acts, we may need to assign counsel through the Madden list, which is not an ideal solution. See Madden v. Delran, 126 N.J. 591, 605-06 (1992).

## VI.

We cannot find that L.A. waived her right to appointed counsel in this case. "Waiver is the voluntary and intentional relinquishment of a known right." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013) (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). Petitioners argue that L.A. waived the right to counsel at the same time they claim no such right exists.

32

Indeed, there was no established or "known" right until the Appellate Division's ruling in this case. Beyond that, the letter and notices L.A. received were equivocal, and no one ensured that L.A. understood she had a right to court-appointed counsel and knew how to exercise it. L.A. did not knowingly and intentionally waive a right to have the court appoint a lawyer to represent her.

In the future, judges should inform a parent of the right to counsel at the first court proceeding. If a parent wishes to proceed pro se, the court should conduct an abbreviated yet meaningful colloquy to ensure the parent understands the nature of the proceeding as well as the problems she may face if she chooses to represent herself. Cf. State v. Crisafi, 128 N.J. 499, 511-12 (1992) (describing more in-depth inquiry required before defendant in criminal case may waive right to counsel). Only then will the court be in a position to confirm that the parent both understands and wishes to waive the right to appointed counsel.

Here, L.A. did not waive the right to counsel and resisted the private adoption petition on her own. In short, she was denied counsel, and her parental rights were terminated at the end of the court proceeding.

Some courts have declined to conduct a harmless error analysis under those circumstances. See State v. Shirley E. (In

re Torrance P.), 724 N.W.2d 623, 635 (Wis. 2006) (finding structural error); K.A.S., supra, 499 N.W.2d at 567 (expressing skepticism that "denial of counsel to an indigent parent in an adoption proceeding which results in the termination of parental rights can ever be 'harmless'" and also finding harmful error in particular case); but see People ex rel. S.D. Dep't of Soc. Servs., 691 N.W.2d 586, 592 (S.D. 2004) (finding harmless error); see also Vivek Sankaran, No Harm, No Foul?  Why Harmless Error Analysis Should Not Be Used to Review Wrongful Denials of Counsel to Parents in Child Welfare Cases, 63 S.C. L. Rev. 13, 14-15 (2011).  Because a complete denial of counsel casts doubt on the fairness of the process followed, we must reverse the trial court's decree and remand for a new trial.  See Shirley E., supra, 724 N.W.2d at 635.

We also decline petitioners' request to reconsider N.J. Division of Youth and Family Services v. I.S., 202 N.J. 145 (2010), and end the litigation now.  I.S. evaluated the record in a particular case and found insufficient evidence to terminate a father's parental rights.  Id. at 151.  Even if it were appropriate to reconsider that ruling, the principles considered in I.S. do not address the fact that L.A. was denied

counsel.[6]

Amici raise certain additional arguments in this appeal. Among other points, the New Jersey Association for Justice and Advocates for Children of New Jersey ask the Court to require the appointment of a law guardian to represent children in private adoption cases. Their argument rests on due process and equal protection concerns.

Had the Division brought this case under Title 30, L.A.'s child would have been represented by a law guardian. See N.J.S.A. 30:4C-15.4(b); see also N.J.S.A. 9:6-8.21(d) and 9:6-8.23 (requiring appointment of law guardian for children who are subject of abuse and neglect proceedings and designating attorneys in Office of Public Defender to fulfill that role).

The Adoption Act does not authorize the appointment of a law guardian. The statute instead provides for the appointment of a guardian ad litem, "a qualified person, not necessarily an attorney," "to represent the interests of the child." N.J.S.A. 9:3-38(e). The court may appoint a guardian ad litem in its discretion, ibid., except in two situations in which it must act, see N.J.S.A. 9:3-47(b) (requiring appointment when agency report is adverse to prospective parent); N.J.S.A. 9:3-48(d)

---

[6] We also decline to address an argument raised by the ACLU about whether a harm standard should be read into N.J.S.A. 9:3-46, because this appeal does not pose the issue.

35

(requiring appointment when agency report, after preliminary hearing, is adverse to grant of final judgment of adoption).

We are reluctant to tackle a constitutional question not raised directly in an appeal, see Comm. to Recall Menendez v. Wells, 204 N.J. 79, 95-96 (2010); Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006), and order appointment of counsel for children in all cases on constitutional grounds. Instead, we invite the Legislature to consider authorizing appointment of counsel for children in private adoption cases. We also remind trial judges of their power to appoint a guardian ad litem under the Adoption Act, N.J.S.A. 9:3-38(e), when the child's best interests are not being adequately protected by counsel for the parties. There may well be cases when the child's interests differ from the parties, and a guardian ad litem will afford the child a chance to be heard in a meaningful way. See Meaghan, supra, 961 N.E.2d at 113. Trial courts have the discretion to appoint an attorney or other qualified person to that position. N.J.S.A. 9:3-38(e).

We agree with the Appellate Division that, in an abundance of caution, the matter should not be remanded to the original trial judge because the court made credibility findings in the first trial. J.E.V., supra, 442 N.J. Super. at 487.

We request that the trial be expedited but express no opinion on what the outcome of the proceeding should be.

36

VII.

For the reasons stated above, we affirm the judgment of the Appellate Division.


JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and JUDGE CUFF (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.