RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NOS. A-4967-14T4
 A-4968-14T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

B.K.L. and K.P.W.L.,

 Defendants-Appellants.
________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF N.F.L.,

 Minor.
________________________________

 Submitted December 13, 2016 – Remanded January 30, 2017
 Resubmitted September 18, 2017 — Decided September 28, 2017

 Before Judges Fisher, Leone, and Vernoia.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Ocean County,
 Docket No. FG-15-0027-12.

 Joseph E. Krakora, Public Defender, attorney
 for appellant B.K.L. (Amy Kriegsman,
 Designated Counsel, on the briefs).

 Joseph E. Krakora, Public Defender, attorney
 for appellant K.P.W.L. (Elizabeth D. Burke,
 Designated Counsel, on the briefs).
 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa Schaffer,
 Assistant Attorney General, of counsel; Amy
 Klauber, Deputy Attorney General, on the
 briefs).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor N.F.L. (Damen J.
 Thiel, Designated Counsel, on the briefs).

PER CURIAM

 This is the second time these appeals have come before us.

In our January 30, 2017 opinion, we remanded for an evidentiary

hearing. B.K.L. (Father) and K.P.W.L. (Mother) appeal Judge Robert

E. Brenner's March 29, 2017 ruling which held they knowingly and

intelligently waived their right to counsel during the

guardianship trial. We affirm, substantially for the reasons

stated by the Judge Brenner in his thorough March 29, 2017 opinion.

 I.

 We summarize the facts and procedural history detailed in our

prior opinion. During a guardianship trial, Father and Mother

filed a federal lawsuit against their attorneys. The trial court

granted their attorneys leave to withdraw. Father and Mother

represented themselves for the remainder of the trial. On June

22, 2015, the court issued an order terminating their parental

rights over their child, N.F.L.

 2 A-4967-14T4
 On appeal, Father and Mother challenged the trial court's

decision to relieve their counsel and have them continue the trial

pro se. We concluded that the court did not properly determine

whether Father and Mother knowingly and intelligently waived their

right to counsel, and remanded for an evidentiary hearing on

whether Father and Mother would have chosen to waive counsel and

represent themselves had they been properly advised of their

rights. N.J. Div. of Child Prot. & Permanency v. B.K.L. (In re

N.F.L.), No. A-4967-14/4968-14 (App. Div. Jan. 30, 2017) (slip op.

at 21-23).1

 On remand, the judge who had conducted the guardianship trial

recused himself. As a result, Judge Brenner presided over the

evidentiary hearing. The judge heard testimony from both Mother

and Father, including testimony on what they would have done had

they received a meaningful colloquy. The judge then considered

the factors we described in our opinion.

 The judge found "that Father and Mother did knowingly and

intentionally waive their right to counsel in connection with

trial," for several reasons. First, the judge found that Mother

1
 We required that any person challenging the ruling on remand
order the transcript on an expedited basis, and that the briefs
to be filed on a tight schedule. However, appellants failed to
order the transcript on an expedited basis, and the last brief was
not filed until August 2017.

 3 A-4967-14T4
and Father had no objection to the court's February 26, 2013 order

relieving their counsel, who had been appointed by the Office of

Parental Representation (OPR). Second, the judge found "both

Mother and Father had the option of obtaining new appointed counsel

in 2013 after their filing of the federal complaint against their

OPR attorneys resulted in the discharge of said attorneys."

 Third, the judge found "Mother was aware of her option to

contact OPR to seek appointment of new counsel but chose not to

do so." Similarly, the judge found that "Father was aware he had

the option of obtaining new appointed counsel," and that "Father

chose, instead, to proceed without counsel for the remainder of

the trial." The judge found "no support" for Father's claim "that

he made a request for the appointment of new counsel and was

denied."

 Fourth, the judge found "that even if Mother and Father had

been given a colloquy and were fully informed by the court as to

the dangers and difficulties of proceeding in a self-represented

capacity during the trial, they still would not have sought to be

appointed with new attorneys." "[N]otwithstanding the challenges

facing a self-represented litigant at trial, the court finds, even

accepting defendants' testimony regarding these challenges, they

still would have chosen to proceed in a self-represented capacity

if they had received the colloquy during the trial." Furthermore,

 4 A-4967-14T4
the judge found their testimony denying their awareness of and

willingness to accept those challenges was repeatedly contradicted

by the trial record. That record showed that they cross-examined

witnesses, made objections, and called or tried to call witnesses

including Mother, and that Father gave a closing argument, all

without requesting the assistance of counsel during the extended

trial.

 The judge found "incredible the testimony given by both Father

and Mother that, had they received a colloquy and been aware of

their options for representation at the time of trial, they would

not have chosen to proceed without counsel." The judge found

their testimony was belied by "their statements and actions during

the pendency of the trial," including Mother's declaration at

trial that "I don't need an attorney."

 II.

 "Appellate review of a trial court's decision to terminate

parental rights is limited[.]" In re Guardianship of J.N.H., 172

N.J. 440, 472 (2002). Our task is to determine whether the

decision "is supported by '"substantial and credible evidence" on

the record.'" N.J. Div. of Youth & Family Servs. v. F.M., 211

N.J. 420, 448 (2012) (citation omitted). "We ordinarily defer to

the factual findings of the trial court because it has the

opportunity to make first-hand credibility judgments about the

 5 A-4967-14T4
witnesses who appear on the stand; it has a 'feel of the case'

that can never be realized by a review of the cold record." N.J.

Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)

(citation omitted). "Particular deference is afforded to family

court fact-finding because of the family courts' special

jurisdiction and expertise in family matters." N.J. Div. of Child

Prot. & Permanency v. N.C.M., 438 N.J. Super. 356, 367 (App. Div.

2014) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)), certif.

denied, 222 N.J. 18 (2015). Thus, "[w]e will not overturn a family

court's factfindings unless they are so '"wide of the mark"' that

our intervention is necessary to correct an injustice." F.M.,

supra, 211 N.J. at 448 (citation omitted). We must hew to our

deferential standard of review.

 III.

 We affirm Judge Brenner's ruling on the waiver of counsel

issue substantially for the reasons stated in his opinion. We add

the following.

 Judge Brenner found Father and Mother "were not credible,"

and his findings were "premised upon [their] lack of credibility."

They challenge the judge's credibility findings. However,

"reviewing courts should defer to the trial court's credibility

determinations." N.J. Div. of Youth & Family Servs. v. R.G., 217

N.J. 527, 552 (2014). "Because a trial court 'hears the case,

 6 A-4967-14T4
sees and observes the witnesses, [and] hears them testify,' it has

a better perspective than a reviewing court in evaluating the

veracity of witnesses." Cesare, supra, 154 N.J. at 412 (citations

omitted). "When the credibility of witnesses is an important

factor, the trial court's conclusions must be given great weight

and must be accepted by the appellate court unless clearly lacking

in reasonable support." N.J. Div. of Youth & Family Servs. v.

F.M., 375 N.J. Super. 235, 259 (App. Div. 2005).

 The judge's credibility findings were amply supported. The

judge found that "Father and Mother had an undeniable and powerful

interest" to testify falsely at the evidentiary hearing, that

their testimony was "often internally inconsistent and

contradicted by the trial record," and that "Father's testimony

throughout the evidentiary hearing was evasive and often non-

responsive or argumentative."

 In particular, Judge Brenner found "no basis to support

defendants' claims [that] they were advised they may be

disqualified from seeking appointment of new counsel based on the

filing of the federal complaint and that the court advised them

it would look into the possible disqualification." Father and

Mother challenge that finding by pointing to a discussion they

were not present to hear.

 7 A-4967-14T4
 Before proceedings commenced on the fifth trial day, February

26, 2013, Father and Mother came to the courthouse and told their

attorneys they filed a federal complaint against them. Father and

Mother then left the courthouse. When court proceedings began

that day, Father's attorney applied "to be relieved individually

as counsel and also for [OPR] to be relieved." He stated he could

not "guarantee there will be representation from [OPR] on March

25th," the next trial day, and that "it is a possibility" OPR

would not have someone present on that day "due to the nature of

the litigation, what is going on in the federal litigation."

 We reject defendants' argument that these statements by

Father's attorney show they were advised they were disqualified

from seeking new counsel. Father and Mother did not hear the

statements because they had absented themselves from the

courthouse. Moreover, Father's attorney did not say that

defendants would be disqualified from seeking new appointed

counsel from OPR, only that there was a possibility that OPR would

not be able to provide an attorney on March 25. Further, the

trial court did not did not grant the application to relieve OPR,

but only relieved the attorneys defendant named in the federal

lawsuit. Finally, Judge Brenner found that Father and Mother were

not disqualified from getting new counsel from OPR. That finding

was supported by sufficient evidence, including that OPR furnished

 8 A-4967-14T4
Father and Mother with counsel throughout this appeal and on both

remands.

 Father and Mother also claim they were told the trial would

continue whether they had counsel or not. They cite the trial

court's comments on February 26 that it "still look[ed] on this

trial as being viable," and that "if . . . come the 25th of March

. . . these defendant litigants are self-represented . . . , the

trial is going to proceed forward." Again, they had absented

themselves from the courthouse and did not hear the court's

comments. In any event, the comments did not suggest that counsel

would not have been provided if requested by Father or Mother,

with trial proceeding with counsel as before. Moreover, the trial

court gave them at least four weeks to obtain new counsel.

 Mother argues Judge Brenner gave undue weight to her

experience in seeking appointment of new counsel. The judge

stated: "Significantly, Mother knew she could call OPR to seek

appointment of new counsel, as she had done so approximately six

months prior to the entry of the February 26, 2013 order." Mother

testified that OPR gave her the same attorney after her earlier

request. She now argues she had no reason to believe a new request

would be granted in February 2013.

 However, the situation in February 2013 was quite different

from the earlier situation. The trial court's February 26, 2013

 9 A-4967-14T4
order granting her attorney's request to be relieved, telling her

she could come to court with a new attorney, and suggesting she

contact OPR. The judge found Mother's "reasons for not doing so

after [receiving] the February 26, 2013 order are neither

reasonable nor believable."

 Lastly, Father and Mother cite the 2017 decision in N.J. Div.

of Child Prot. & Permanency v. R.L.M., 450 N.J. Super. 131 (App.

Div. 2017). Of course, that decision came years after the 2013

proceedings here and could not have influenced the trial court,

let alone Father and Mother. Nor does it support their arguments.

 Mother argues R.L.M. held that parents in termination cases

do not have the right to represent themselves. R.L.M. held a

parent does not have "a constitutional right of self-

representation" or an explicit statutory right. Id. at 147-48.

However, we ruled that parents have "the Rule-based right to appear

pro se" in a termination case. Id. at 148; see Rule 1:21-1(a).

 Of course, that "right is not absolute." R.L.M., supra, 450

N.J. Super. at 148. "[A] court may relax the Rule-based right of

self-representation in a termination of parental rights case if

it concludes that, on balance, the parent's pro se efforts would

significantly undermine the interests of the child, the State, and

the court in achieving an accurate result without undue delay."

Ibid.; see R. 1:1-2(a). Unlike the trial court in R.L.M., the

 10 A-4967-14T4
trial court chose to allow Father and Mother to exercise their

Rule-based right to self-representation, and expressed its belief

the trial still could viably serve those interests. Defendants

do not show an inaccurate result, undue delay, or an abuse of

discretion.

 Mother cites our statement in R.L.M., supra, that, as in

criminal cases, a self-representation request "must be made before

meaningful trial proceedings have begun." 450 N.J. Super. at 150

(quoting State v. Buhl, 269 N.J. Super. 344, 363 (App. Div.),

certif. denied, 135 N.J. 468 (1994)). Failure to make a timely

request is a basis to "find no abuse of discretion in the trial

court's denial of defendant's requests to proceed pro se," Buhl,

supra, 269 N.J. Super. at 364, but it does not preclude a court

from granting a mid-trial request under appropriate circumstances.

See United States v. Banks, 828 F.3d 609, 617 (7th Cir. 2016),

(ruling a defendant cannot "claim that the court was required to

reject" an untimely request for self-representation), cert.

denied, __ U.S. __, 137 S. Ct. 1122, 197 L. Ed. 2d 222 (2017). A

mid-trial change in representation was unavoidable once Mother and

Father sued their attorneys and caused them to be relieved.

 Mother also notes that a request must be "unequivocal."

R.L.M., supra, 450 N.J. Super. at 150 (quoting State v. Figueroa,

186 N.J. 589, 593 n.1 (2006)). Defendants' suit against their

 11 A-4967-14T4
attorneys unequivocally caused their removal. Judge Brenner found

their subsequent conduct constituted a knowing and voluntary

waiver of counsel, and that they would have done the same had they

received the appropriate colloquy.

 Father suggests R.L.M. requires the appointment of standby

counsel. R.L.M. noted that in commitment hearings for sexually-

violent predators, the Supreme Court held a "defendant has a

statutory right to appear pro se at a commitment hearing, but only

if standby counsel is present." Id. at 147 (emphasis added)

(citing In re Civil Commitment of D.Y., 218 N.J. 359, 384 (2014)

(citing N.J.S.A. 30:4-27.29(c) and -27.31(a))). However, the

Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38, has

no applicability to parental termination proceedings, where the

right to counsel is governed by N.J.S.A. 30:4C-15.4.

 In R.L.M., supra, we did not decide "whether N.J.S.A. 30:4C-

15.4 grants a right to appear pro se with standby counsel," because

the father there did not "propose to represent himself with the

assistance of standby counsel." Id. at 148-49. Similarly, we

need not decide that issue because neither Father nor Mother asked

for the assistance of standby counsel. See Nieder v. Royal Indem.

Ins. Co., 62 N.J. 229, 234 (1973); N.J. Div. of Youth & Family

Servs. v. H.B., 375 N.J. Super. 148, 186 (App. Div. 2005).

 12 A-4967-14T4
 Judge Brenner held the hearing, and considered the factors,

which we mandated in our prior opinion. He found that Father and

Mother had the option of obtaining new appointed counsel, that

they were aware of that option and instead chose to represent

themselves, and that they would have made the same choice if they

had received the meaningful colloquy subsequently called for in

In re Adoption of a Child by J.E.V., 226 N.J. 90, 114 (2016).

 Judge Brenner's findings were supported by substantial

credible evidence, as described in his opinion. His findings were

also corroborated by the attitude of Father and Mother at trial.

Father believed his OPR attorney was "representing" the Division

and "working with the Division." Mother did not believe her OPR

attorney "was representing [her]." Father and Mother then sued

their OPR attorneys, alleging the attorneys were depriving them

of their constitutional rights. The belief that the OPR attorneys

were conspiring with the Division to deprive them of their rights

gave Father and Mother an incentive to forego asking for new OPR

attorneys, and instead to represent themselves.

 Accordingly, we accept Judge Brenner's findings and reject

defendants' claim that they involuntarily went pro se.

 IV.

 On appeal, neither Mother nor Father challenge the substance

of the trial court's decision to terminate their parental rights.

 13 A-4967-14T4
Father's initial appeal made a challenge to prong four, but only

"[b]ased upon the failure of the court to ensure that [he]

knowingly and intelligently waived his right to counsel" at the

trial. We have rejected that claim.

 In the initial appeal, we did not reach Mother's claim that

she was not given adequate notice of the specific statutory basis

for termination, and thus was not afforded due process. We now

reject that claim. The Division's complaint alleged it was seeking

guardianship under N.J.S.A. 30:4C-15 through -22. In particular,

the complaint alleged that: (1) "the parental relationship harmed

the health and development of the child and threatens to do so in

the future"; (2) the parents "are unwilling or unable to eliminate

the harm facing the child, and are unwilling or unable to provide

a safe and stable home for the child," and "[t]he delay of

permanent placement for the child will add to the harm"; (3) the

Division made efforts to provide services to both parents, and

"has considered alternatives to termination of parental rights";

and (4) that "it would be in the best interest of the child . . .

to be placed under the guardianship of the Division for purposes

of adoption."

 The complaint's allegations put Mother and Father on notice

that the Division was seeking termination under N.J.S.A. 30:4C-

 14 A-4967-14T4
15(c)'s "best interests" test, whose four prongs are set forth in

N.J.S.A. 30:4C-15.1(a):

 (1) The child's safety, health or development
 has been or will continue to be endangered by
 the parental relationship;

 (2) The parent is unwilling or unable to
 eliminate the harm facing the child or is
 unable or unwilling to provide a safe and
 stable home for the child and the delay of
 permanent placement will add to the harm.
 Such harm may include evidence that separating
 the child from his resource family parents
 would cause serious and enduring emotional or
 psychological harm to the child;

 (3) The division has made reasonable efforts
 to provide services to help the parent correct
 the circumstances which led to the child's
 placement outside the home and the court has
 considered alternatives to termination of
 parental rights; and

 (4) Termination of parental rights will not
 do more harm than good.

 At the guardianship trial, the Division and the Law Guardian

presented evidence and argument seeking termination based on the

"best interests" test in N.J.S.A. 30:4C-15(c) and 15.1(a). The

trial court terminated Father's parental rights under the "best

interests" test, but terminated Mother's parental rights based on

abandonment. See N.J.S.A. 30:4C-15(e), -15.1(b).

 Mother appealed, and filed a motion for remand. She stressed

"[t]he complaint was based on the best interests of the child and

the elements of the four-pronged test were discussed in detail."

 15 A-4967-14T4
She "request[ed] that this court order the trial court judge to

re-evaluate the matter based on the four-prong 'best interests of

the child' standard." The Division did not object to a remand "to

clarify the court's findings under N.J.S.A. 30:4C-15 and the four-

part best interest of the child test codified at N.J.S.A. 30:4C-

15.1."

 On January 27, 2014, we vacated the order terminating parental

rights, and remanded. At the May 15, 2014 hearing, the Law

Guardian raised whether the trial court should apply the "best

interests" test. At the September 5, 2014 hearing, the Law

Guardian and the Division urged the trial court to apply the "best

interests" test, which Father's counsel agreed was permissible.

On February 23, 2015, the court heard oral summations from the

parties to determine if the evidence at trial was sufficient to

support termination of defendants' rights under the "best

interests" test. The court ultimately applied that test on June

22, 2015. Because Mother had repeated notice over a long period

that her parental rights could be terminated under the "best

interests" test, she received "procedural due process – fair notice

and a meaningful opportunity to be heard." N.J. Div. of Youth &

Family Servs. v. R.D., 207 N.J. 88, 120 (2011).

 This bears no resemblance to the cases Mother cites. Cf. id.

at 118 (finding an ambiguous "passing reference" did not give

 16 A-4967-14T4
notice of which burden of proof would be applied in an abuse or

neglect proceeding); N.J. Div. of Youth & Family Servs. v. P.C.,

439 N.J. Super. 404, 413-14 (App. Div. 2015) (reversing where the

Division sought a finding of abuse or neglect only against the

father, but the court sua sponte and "without prior notice"

commenced abuse or neglect proceedings against the mother).

 Mother notes she objected to considering the "best interests"

test and argued the trial court on remand could consider only

abandonment. Nonetheless, on February 23, 2015, Mother had the

opportunity to argue whether the evidence met the four prongs.

 Mother notes that our January 27, 2014 order "remanded for

the [trial court's] reconsideration and additional findings on the

abandonment issue." However, on July 8, 2014, we granted the Law

Guardian's motion to clarify that order, stating:

 Th[is] court's intention in entering the
 January 27, 2014 order was – and is now – to
 obtain findings from the trial judge on the
 abandonment issue but, also, to provide the
 judge with the opportunity to modify the
 disposition of the case if the judge felt the
 need to do so upon rendering findings on the
 abandonment issue. We also intended no limit
 on the trial court proceedings that would be
 needed in order to allow the judge to rendered
 informed findings on the abandonment issue.

 [(Emphasis added).]

 Thus, our intent in vacating and remanding was to permit the

trial court to make adequate findings on the abandonment issue

 17 A-4967-14T4
and, if the court felt termination of parental rights could not

be justified under abandonment, to modify the disposition by

denying termination or by terminating on another basis.

Accordingly, the court was allowed to consider termination on the

basis of the "best interests" test under our July 8, 2014 order.2

 In its June 22, 2015 oral opinion, the trial court considered

the trial evidence under the four prongs of the "best interests"

test. The court found "because we have a full-blown record that

there does not need to be any additional testimony." The court

also found the Division had proved, by clear and convincing

evidence, all four prongs of the "best interests" test and

terminated the parental rights of Mother and Father under that

test. Father and Mother have not shown any basis for us to

question the propriety of that order.

 Affirmed.

2
 The trial court did so without first making findings on
abandonment. However, Mother was not prejudiced, as the court
abandoned abandonment as a basis to terminate her parental rights.

 18 A-4967-14T4