# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3893-17T3
                 A-3895-17T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

       Plaintiff-Respondent,

v.

F.M. and A.G.,

       Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.M.
and I.M.,

        Minors.

_____

Argued November 14, 2018 – Decided January 7, 2019

Before Judges Ostrer, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0047-17.

Lauren Derasmo, Designated Counsel, argued the cause for appellant F.M. (Joseph E. Krakora, Public Defender, attorney; Lauren Derasmo, on the briefs).

Bruce P. Lee, Designated Counsel, argued the cause for appellant A.G. (Joseph E. Krakora, Public Defender, attorney; Bruce P. Lee, on the briefs).

Kimberly S. Dinenberg, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Kimberly S. Dinenberg, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Melissa R. Vance, on the brief).

PER CURIAM

In these consolidated appeals, defendants F.M. (Faith)[1] and A.G. (Adam) appeal the April 16, 2018 order terminating their parental rights. Faith argues the Division of Child Protection and Permanency (Division) failed to prove the four prongs of the best interests of the child standard under N.J.S.A. 30:4C-15.1(a). Adam contends the Family Court judge erred in conducting the

---

[1] We use pseudonyms to refer to the individuals in this case for the purposes of confidentiality and clarity.

guardianship trial in his absence. After reviewing the contentions in light of the record and applicable legal principles, we affirm.

The facts as found by the trial judge can be summarized as follows. Faith is the biological mother of N.M. (Nick),[2] born in 2015, and I.M. (Isabelle), born in 2016. Faith is also the mother of T.W. (Tiffany), born in 2002, who was not a party to this guardianship action.[3] Isabelle is Adam's biological daughter.

After Nick's birth, the Division received a referral reporting concerns for Nick due to Faith's untreated mental health issues, and ongoing substance abuse. Faith reported self-medicating with marijuana and prescription pills. Faith sought help from the Substance Abuse Initiative (SAI) to manage her bipolar disorder, depression, anger issues, and recent homelessness. From August 2015 to June 2016, the record is replete with services the Division provided Faith to help manage her addictions and living situation. The Division referred her for numerous evaluations, where professionals determined the requisite level of care to combat her addictions. Although Faith was enrolled in several treatment programs, she was discharged from them after failing to attend. The Division

---

[2] Nick's biological father, A.M., has not appealed the termination of his parental rights.

[3] Tiffany lives with her father. Faith has supervised visitation with her.

A-3893-17T3

also referred Faith for parenting classes; however, she missed half of the sessions and fell asleep during the others. During this time, the Division implemented several safety protection plans to ensure supervised and safe visits between Faith and Nick.

In February 2016, the Division learned Faith was pregnant and had tested positive for opiates, oxycodone, cocaine, and marijuana. As a result, the Division conducted an emergency Dodd removal of Nick.[4] In June 2016, the Division learned Faith had given birth to Isabelle and had tested positive for oxycodone. Although Isabelle did not test positive for any substances, she displayed mild withdrawal symptoms.

The trial court granted the Division custody and care of both Isabelle and Nick, and ordered supervised visitation for Faith and her children. The Division placed Isabelle with Faith's family friend, E.M. (Emily), and Nick was in a selective home setting, where they remained until the trial. The court also ordered a paternity test to determine whether Adam was Isabelle's biological father.

---

[4] A Dodd removal is an emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82.

A-3893-17T3

From June 2016 until July 2017, Faith struggled to maintain her sobriety. She overdosed on heroin in September 2016 and tested positive for various illegal substances and opiates in January, March, April, May, and July 2017. During this time, Faith began treating her addiction with methadone.

In December 2016, Dr. Gregory Gambone conducted a psychological evaluation of Faith. He diagnosed Faith with alcohol abuse, opioid abuse, cannabis abuse, bipolar disorder, and dependent personality disorder along with other conditions. Dr. Gambone concluded Faith was not "capable of adequately parenting her children on an independent basis." In February 2017, the Division presented a plan for defendants' termination of parental rights and the adoption of Nick and Isabelle. Because Faith was minimally complying with treatment, and had some success with her methadone treatment, the court rejected the plan for termination.

Over the next several months, Faith had some negative drug screens, but also two positive tests for opiates and one for benzodiazepines. In July 2017, Faith tested positive for cocaine and failed to submit to random urine screens. She was also dismissed from a parenting course after missing too many sessions.

In August 2017, Faith attended a psychological evaluation with Dr. Alan Lee. He concluded, in a seventeen-page report, that Faith had a "heightened risk

for substance abuse relapse," "[h]er prognosis for significant and lasting change" was poor, and he did not recommend reunification between Faith and her children.

Faith refused to appear for several bonding evaluations scheduled for her and the children. Dr. Lee, however, conducted a bonding evaluation between Isabelle and Emily. Although Isabelle was a little young for a bonding evaluation at fourteen-months old, Dr. Lee found she was "essentially at the point of solidifying a significant and positive psychological attachment or bond with [Emily]" and Isabelle was at "a significant risk of suffering severe and enduring psychological or emotional harm" if their relationship permanently ended.

Faith tested positive for drugs for the last time in October 2017, six months before the guardianship trial. After her positive screen, she regularly attended mental health and substance abuse treatments, and supervised visitations. Faith remained sober in the months leading up to the April 2018 guardianship trial. However, at the time of trial, she was on probation from the John Brooks Recovery Center program after missing days. She was unemployed for more than fifteen years and continued to lack stable housing.

6

Several weeks before the trial, Faith's aunt, Ava, expressed interest in caring for the children, although she wanted "more of the responsibility to fall on [Faith]." When Ava was informed she would be responsible for the children and would have to supervise all contact between them and Faith, Ava responded she needed time to think it over. Several days later, Ava stated she was interested in adopting Nick and Isabelle.[5]

During the Division's involvement with Faith, it made multiple referrals for treatment, inquired about inpatient programs, offered transportation, provided materials to make Faith's living situations acceptable for Nick and Isabelle, accommodated frequent supervised visitations, and established numerous safety protection plans to enable Faith to be a parent for her children. The Division also considered all relatives Faith offered as potential placement options, but they were ruled out for mental health issues or a criminal background.

Adam, fifty-eight, has a thirty-six-year-old son and has not held a full-time job for longer than two years. He had a prior history of substance abuse and several convictions on drug charges in the 1990's and early 2000's. After

---

[5]  The judge noted in his decision that Ava remained an option for the Division to consider for Nick's select home adoption.

A-3893-17T3

learning Isabelle was his daughter, Adam expressed interest in visitation and potential custody, if Faith was unable to do so. However, at that time, Adam lived in a single room, which was inappropriate for a baby. Although Adam agreed to participate in services, he failed to attend random urine screens and two appointments at the Center for Family Services for substance abuse evaluations.

Adam appeared for supervised visits with Faith and Isabelle on four occasions. However, after attending Isabelle's first birthday party, Adam told the Division he no longer wanted any scheduled supervised visits with Isabelle, but instead he would see her randomly around Atlantic City.

The guardianship trial was held on April 12 and April 13, 2018. Adam was not present. The judge noted Adam was served with the guardianship complaint and notified by the Division caseworker as to the trial dates. Although Adam had appeared for mediation and requested the representation of a public defender, he did not participate in the trial. The Public Defender's Office of Parental Representation represented Adam during trial.

On April 13, 2018, the Family Court judge issued a detailed oral decision terminating the parental rights of Faith, Adam, and A.M., and finding the

Division had satisfied each of the prongs set forth in N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.

On appeal, Faith argues: 1) the court erred in its statement that she had only been sober for three months prior to trial; 2) the Division did not provide reasonable services to her, including a referral for inpatient treatment for her substance abuse problem; 3) the court did not consider two potential caretakers and; 4) there was no evidence of a bonding relationship between Isabelle and Emily. Adam contends the trial should not have occurred in his absence.[6]

N.J.S.A. 30:4C-15.1(a) authorizes the Division to petition for the termination of parental rights in the "best interests of the child" if the following standards are met:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

---

[6] Adam does not explain or provide any reasons in his brief for his absence from trial.

A-3893-17T3

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

"Our review of a trial judge's decision to terminate parental rights is limited." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters," we accord even greater deference to the judge's fact finding. N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (alteration in original) (quoting Cesare, 154 N.J. at 413). Unless the trial judge's factual findings are "so wide of the mark that a mistake must have been made," they should not be disturbed, even if the reviewing court would not have made the same decision. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

A-3893-17T3

The Family Court judge made factual findings and credibility determinations in his comprehensive and well-reasoned oral decision. We, therefore, affirm substantially for the reasons expressed by the judge in his decision. We add the following brief comments.

In addressing Faith's sobriety, the judge misspoke when he stated Faith had only been sober for the last two or three months. Her trial testimony revealed a sobriety of six months. The error was immaterial, however, as the judge advised he was relying on Dr. Lee's opinion that Faith needed at least six months to a year of sobriety to demonstrate she could provide a safe home for the children. The judge stated: "There's no evidence of 12 months of sobriety . . . [or] 12 months of continued mental health treatment."

We also are not persuaded by Faith's argument that the Division failed to provide her with reasonable services, including inpatient treatment. In considering this assertion, the judge noted the Division does not provide treatment, rather, it makes referrals and "sends the client out to a professional" who decides whether the patient receives treatment using "their professional judgment." Faith was evaluated and treated at SAI and the John Brooks Recovery Center. The judge stated, "[the facilities] decide the level of treatment and they decide whether or not [the patient is] going to go inpatient. And that's

11

their prerogative, that's their professional judgment." Faith was referred to multiple substance abuse evaluations with certified counselors who determined her need for and level of treatment.

Faith's contention that Isabelle had no bond with Emily is without merit. Isabelle left the hospital with Emily five days after her birth and has remained in Emily's care for her entire life. The judge described Emily as having an "extraordinary relationship" with Isabelle. Dr. Lee's opinion that Isabelle would be at a "significant risk of suffering severe and enduring psychological or emotional harm" if her relationship with Emily ended is uncontroverted.

Isabelle will not suffer "more harm than good" by terminating Faith's parental rights. "When a parent has exposed a child to continuing harm . . . [by being] unable to remediate the danger to the child, and when the child has bonded with foster parents who have provided a nurturing and safe home," terminating parental rights will not do more harm than good. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108 (2008). Moreover, if the separation of the child from the foster parent will cause serious harm, the fourth prong of the statute is satisfied. Ibid.

Similarly, we are unpersuaded that Nick will experience more harm than good because he does not have an adoption planned. The Family Court judge

A-3893-17T3

reasoned that Nick "needs to be . . . legally free to complete the guardianship process so that select home adoption can be opened up to a wider swath of eligible parents and . . . have a matching process take place so that he can get permanency sooner than later." As noted, Ava will be considered in the select home adoption process for Nick. Children should not be allowed to "languish indefinitely" while a parent tries to correct the problems that led to the Division's involvement with the family. N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209-10 (App. Div. 2007). At this young age, terminating Faith's parental rights will not cause Nick more harm.

We are satisfied the trial court supported its findings that the Division proved all four prongs of the best interests of the child test with substantial credible evidence. The judge conducted a well-reasoned assessment of the evidence and thoroughly considered each prong of the statute. Faith's remaining arguments lack sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E).

We consider, and reject, Adam's assertion that the guardianship trial should not have proceeded in his absence. There is no due process right mandating a parent's physical presence at a civil termination of parental rights trial when represented by counsel. See N.J. Div. of Child Prot. & Permanency

A-3893-17T3

v. R.L.M., 450 N.J. Super. 131, 143 (App. Div. 2017), aff'd on other grounds, __ N.J. __ (2018); N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 169 (App. Div. 2012) (explaining a parent who is "represented by counsel may defend at trial without being physically present") (quoting N.J. Div. of Youth & Family Servs. v. P.W.R., 410 N.J. Super. 501, 506 (App. Div. 2009)); see also N.J.S.A. 30:4C-15.4(c) (explaining the State must provide counsel if the parent is indigent).  Adam was served with the complaint, notified of the trial dates, attended mediation, and requested a public defender who represented him at the trial.  He has provided no explanation for his absence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3893-17T3